Can we call the next case please? 3-10-0535 consolidated with 3-10-0536 Keith Jones, et al. Appellants by Garth Madison v. Cheryl Lockard, et al. Athletes by Mary Welsh and M. Michael Waters. Mr. Madison. May I please the Court? My name is Garth Madison and I'm here on behalf of the petitioners, the First Baptist Church of Canton and Pastor Keith Jones. Your Honours, this appeal focuses on the issue of whether the Human Rights Commission charge was filed within 180 days of the alleged conduct as required by the Human Rights Act. And I would point out initially that time limitation is a jurisdictional time limit written into the statute without which the Human Rights Commission has no authority under the statute, under this extra common law created remedy to act. And that jurisdictional time limit is not waivable, it's not subject to equitable defenses, and it is to be strictly complied with. The case before this Court involves allegations of sexual harassment by the Respondent Cheryl Lockard that cover a broad time span. This is a hostile environment claim, and she alleged sexual harassment acts as early as January 2001, all the way through her filing, which she waited to file until April 2004. This isn't really the essence of your case. You have one alleged contact within the 180-day period. Yes, Your Honour. And there's preceding alleged conducts or acts of in-conduct outside of the 180-day period? Yes, precisely, Your Honour. And the one within the 180-day period is a backrubber. Well, there were actually two. There were two alleged. One was the speaking of my cheat comment, and the other was the backrubber. Okay, so you have those two? Yes. Okay. So you're saying those are not sufficient as a matter of law to establish a hostile environment? Well, Your Honour, I'm saying that the administrative law judge underneath applied an incorrect standard of law, made an error of law in not considering. He cited to Morgan, but he did not consider the intervening action in the employer in October 2003 and the facts that removed those two actions from being part of the same hostile environment. Yeah, but are those two, within that period of time, capable of establishing a hostile environment? No, Your Honour. Why not? Well, first of all, and we're dealing with two statements, two events. Two acts. They're slightly different. The one is the speaking of my cheat comment, which the respondent locker did allege was sexual harassment. And she actually, her testimony of it was slightly different. She said it was, we'll be rubbing cheeks or something, meaning buttock cheeks. The administrative law judge's finding was actually that it was, what happened was the, Pastor Jones was meeting in the church with the music director and some other people who were setting up some sound equipment. And they had an earphone that had a microphone on the cheek. And he said, well, if you can't hear me speaking of my cheek, meaning facial cheek, the administrative law judge's finding of fact was actually that comment, that it was the facial cheek. I don't know that the respondents even themselves seriously contend that that would constitute sexual harassment. Ms. Locker was also, at the time, she was in a balcony in the church some 30 feet away. She was at some distance from the speakers. There's no evidence they knew she was there. There's no sexual content or sexual context to that comment. And I don't believe that that's part of the same hostile environment claim that she raised before, which was largely, it was generally coarse language, lewd comments, things of that nature. The most off-cited one is a joke about overtime under my desk, an oral sex reference. Now, those are all outside of the 180. Yes, Your Honor. My question was, you're saying there's two acts of conduct. One, you're saying that ALJ found that that was not an inappropriate comment, right? Well, I was referring to his finding of fact in terms of what we're dealing with on appeal for what that event actually was. You're right. He actually did not find that that was. Okay. So let's go to the shoulder rub. The shoulder rub, which he did find. The shoulder rub, his finding of fact basically pulls from her testimony. This was actually an event that she did not initially allege before the Human Rights Commission. It was not in her initial complaint. She added it later. And the only source we have for it is the testimony that she gave during the hearing. Basically, she actually raised it herself during testimony as an example of how she was stressed. She had the other – this was a small church office. She was acting – she was serving as the treasurer, and there was working in that same office with her a secretary. That secretary had resigned in October 2008. She was – or actually 2003. She was having to do a lot more work. She said she was under a lot of stress because of that. She was there working that late hour. Pastor Jones came in, asked her in that context, how are you doing? The only testimony of spoken words is he's asking her, how are you doing, and briefly rubbing her shoulder. She says, I'm fine. I'm doing fine. Shrugs her shoulders, and he immediately stops. That's the end of the event. That's the full extent of the event. Again, there's no evidence in the record of any sexual content or context to that shoulder rub. It's an entirely different character from the previous – the allegations of the coarse language, the sexual jokes, and that type of harassing conduct. The only thing that pushed physical contact that was alleged was throwing stress balls, the soft stress balls that you squeeze with your hand. Cheryl Lockhart had alleged that they were thrown by Pastor Jones at the breasts or crotches of people. Now you're back to all the stuff before the 1A. That's before. So your argument, in essence, is this was a benign contact. It has no relationship substantively with any of the acts alleged outside of the 180, which are not actionable, right? Well, Your Honor, I think we have to look at the entire fact record in context. There was also a Ms. Lockhart complaint to the employer in October 2003. At that point, she was alleging this history of sexual harassment, this hostile environment, and she – actually, interestingly, she was not only the treasurer, she was on the Board of Ministries in 2002 and 2003, which is the governing board that governs the church and has employment decisions over the employees, including the pastor. But in any case, she had been on the board previously, 2002 and 2003. October 2003, she complains. She complains to Brad Anderson, who was at that point the chair of the Board of Ministries. She also complained to the Pastoral Relations Committee, which included three members, including her father-in-law, Bill Lockhart, who was the immediate past chair of the Board of Ministries. She complained to those entities. Actually, October 2009, 2003, Brad Anderson intervenes with Pastor Jones, and that intervention included the oral sex comment that's the most often cited in this record. And subsequently, the Pastoral Relations Committee also has a meeting with Pastor Jones and also, again, reinforces that and intervenes, tells him that there are these complaints about the language, that the office atmosphere has to change, the coarse language, the jokes cannot continue. There were also complaints that had been made about his temper. The record, from the facts in the record, all the facts in the record demonstrate that that change did, in fact, occur. That she complained in October of 2003 that the employer took action and that thereafter the sexual jokes stopped, that the atmosphere was different. We have testimony from Dave Bannister, who was brought in to replace the secretary who left in October 2003. And he started by December. He was there in the office on a daily basis, a mutual third-party witness. In December 2003, he confirms that those sexual jokes were no longer part of the work environment, that that hospital environment had changed. And, I mean, the other part of the record that we have is Cheryl Locker's testimony herself, which also confirmed that. She at one point testified that there was no sexual harassment between November and April. Of course, she claims that the April of 2004 comment was sexual harassment. She also claims the shoulder rub was sexual harassment. But the sexual jokes had stopped from her testimony as well. So what's our standard of review here? There has been some question raised by the briefs about the standard of view. We submitted that the standard actually de novo because what we're appealing is the erroneous legal conclusion of the Administrative Law Judgment Commission and their error in law in applying Morgan. They took the ALJ's decision in cites to Morgan, but he never applied the exceptions to Morgan. And the respondents actually dispute that those exceptions should even apply, that the previous Illinois case law has applied those. Would you want to enlighten us to that? Yes, Your Honor, I would be happy to. There are, and I recognize that there are, you know, there are a few Illinois cases here to help us, and there's actually little guidance, little firm judicial guidance in terms of what factors you look at when you're applying the Morgan ruling. What do you call the legal conclusion of the ALJ? What was that? Well, Your Honor, the ALJ and the commission, actually the ALJ's report stated that Morgan does not require the timely incident to be the final or operative act, which is correct. And then went on to find the shoulder rub was part of the sexual harassment claim, mainly based on its proximity to time. But he failed to apply the exceptions in the Morgan rule and consider both the relatedness argument that I'm making right now and the intervening employer action. The fact that she complained in October 2003, there was a distinct change in the work environment at that point, and that that sexually harassing environment upon which the earlier conduct, and she was basing her claim, that that ended, that stopped, that did not continue past that October date. Isn't that a factual determination that the last act was part of the same continuum? Well, Your Honor, the determination that the shoulder rub is part of the hostile work environment is an application of the law of the facts, which could arguably be the intermediate standard of review that the state respondent cited to. However, I believe that the ALJ made a distinct error of law in that he did not apply the Morgan rule or the Morgan rule's exceptions. And that that's a question of law. That's a de novo standard because that goes to how the courts are going to interpret the statute. And although questions of fact are, of course, given deference from the administrative standpoint. How would you apply Stengelman County to that? Well, Your Honor, the Stengelman County case. It doesn't mention the exception. Well, the Stengelman County case, it doesn't mention the exception. It does cite, with approval to Gus Diara, the second district case, and the Jenkins case out of this district, which both do cite to the Morgan exceptions. They don't. The Stengelman County case does not discuss those exceptions. But the fact that it doesn't discuss them does not mean that the Supreme Court was saying that they don't apply. I think that's an incorrect interpretation of the case law. I think that's just not right. Counselor, you have one minute. Thank you. The Stengelman County case, the Respondents actually cite to that as support for this broad interpretation of the statute. But Stengelman County used a broad interpretation when they were looking at the strict liability of a supervisor employee. That has no application whatsoever to this case. Stengelman County actually did recognize that 180 days is a requirement, a prerequisite requirement, before you can get human rights commission jurisdiction. And the Stengelman County case, it doesn't really have much of a discussion. It just kind of says the Morgan rule and then just says, well, it was all part of the same hostile environment here without discussing it. I think, you know, in that case, and, in fact, in Guskiara and Jenkins, all of those, the continuing conduct, the timely action. Let's say the intermediate standard of review applies, and to the finding that the shoulder ruff was part of the whole. How does the intervening act of the committee with Mr. Jones, how does that work within the context of clearly erroneous? Well, Your Honor, the intervening act, I mean, we've got Cheryl Lockard approaching in October 2003 and complaining about this to the employer. Waiting more than 180 days past that to complain to the Human Rights Commission. And she, at that point, you know, she complains the employer does take action. They talk to Pastor Jones. Some of the cases, you know, do have a transfer from one department to another and that kind of thing. Obviously, I mean, the church office, it's a small office, three full-time employees, actually two at that point since they were understaffed. But the employer did step in and stop that conduct, change the environment. And I think the record reflects, in this case, that that environment did change. And the fact that, you know, so we've got that distinct change. And the case line, I did cite, we did cite in our briefs to a couple of federal cases. You know, there's no clear, there's no, the Morgan case and the subsequent federal cases don't come out and say, okay, these are the standards we look to, to determine what a valid, you know, employer intervening employer action is or, you know, what constitutes. But I think the important thing is whether that harassing environment changed. Were those subsequent, those timely acts part of that same harassing environment? And in this case, I think it's clear that that harassing environment did change after that point and that these two acts are not related. Thank you. Any other questions? Okay. Thank you very much, Madison. And Ms. Welch. Good morning, Your Honors. May it please the Court, I'm Mary Welch. I'm here on behalf of the Commission. I'm going to take the first half of the time to talk about the more threshold legal questions, particularly the standard of review, because it is essential to this case. And Mr. Waters will be speaking in the second half of our 15 minutes to talk more about the factually intensive aspect of this. I think the first question, Justice McDade, you were correct, this is really a factual question about whether the claim is timely. And, in fact, this Court held in Jenkins that it was a factual question, if I can read it. It says, and this was, by the way, a dismissal by the Department, but still what this Court said was a fact finder could easily conclude that this conduct was part of the same actionable hostile environment claim. So if it's a fact finder question, it must be a question of fact. And if it's a question of fact, then the timeliness aspect is decided under the manifest way to the evidence standard. And now here what happened was what the Court had to, what the Commission had to look at was whether it was sexual in nature, you know, three components of a sexual harassment claim, whether it's sexual in nature, whether it's part of the claim, you know, and whether it was severe and pervasive. And this was part of, you look at the whole context of the case, of the whole three years of work, this was just the last straw in the entire three years of contact between these two people. And, again, you know, although counsel suggests that this particular kind of action was different in kind, but in Sangamon County the same thing was true. The last act was a letter which was entirely different, a letter to a third party, you know, a letter pretending to be from a third party saying that she had a sexually transmitted disease, which was completely different from the perpetrators, their come ons and, you know, asking for, you know, sexual favors and so on. So it's the part of, the controlling term here is part of. If it's part of this over, one of the series of acts that's part of the entire sexual harassment claim, then it's timely. And certainly not only could a fact finder here find that it was timely, as Mr. Waters will explain more fully, the fact finder here did find that it was part of the entire series that cumulatively created this hostile work environment. And remember, the circumstances surrounding this, the back rub, this is nighttime at the office. The pastor comes in, and if I can read, this is from page 81 in the transcript. He comes out of his office. He asks how things are going. I'm like, I'm doing fine, kind of trying to cut off the contact with him, obviously. And so he comes up and he starts massaging my shoulders. I mean, I don't know what kind of office other people work in, but I know that in my offices I worked in, I know, but certainly not my boss comes up and starts massaging my shoulders in the evening. I mean, this is a clearly sexual component, and it continues on. She didn't want it. It was unwelcome, another factor. And so, excuse me. So you're saying that a hostile environment could be found within this one act, which was timely over. I'm saying it doesn't matter. Yes, I think it could, but I'm saying it doesn't matter because we know from Morgan and both the federal and the state cases in Sangamon County that the final act doesn't have to be itself so severe, like a discharge or a, you know, just exposing yourself, something overtly sexual like that. It doesn't have to be so severe and pervasive in and of itself as to constitute a separate violation. It just has to be one of this piece of the continuum of conduct that creates a hostile work environment cumulatively, and certainly this did. Yes, that's your theory. The case is that you have this last act, which basically brings in all the other proceeding outside the 180 days. Correct. To create an easy case for a hostile environment. Correct. Now, my question, and I'm trying to simplify this, is that the act at the back row, arguably, you're saying, isn't pervasive enough to establish a hostile environment. In my, you know, certainly in my opinion it is because it's so sexual. Well, that's interesting, but what you and I may think may differ, whatever, but under a review case, if the finder of fact would find that. Right. We have a manifest way to the evidence review, is that correct? Right. I'm sorry. Okay. If the finder of fact would find that sufficient, okay, then a reviewing court applies the manifest evidence standard to review whether that was correct or incorrect finding, right? Well, correct, but also it applies the manifest way to the evidence standard to determine whether the commission was correct in finding that the entire series of conduct cumulatively caused a sexually hostile work environment. Because here, that's part of the timeliness aspect, because this has to be part of the entire course of conduct to be a hostile work environment claim. So I guess I'm trying to make it a little more simple than that. Well, I think you're trying to. Let's help. I'm real simple on this. We have one act within a 180-day period, the back row, and you're saying that it could be found by finder of fact to establish a hostile environment, that claim alone. Am I correct? Yes, I believe it could. But again, the commission here was addressing the hostile work environment claim as an entity, right, as a cumulative case. So I think if the court would perhaps have to remand back to the commission to determine if that particular act in and of itself, because it wasn't addressing that question. It was addressing only the hostile work environment claim. Okay, because you can have hostile environment both from single acts as well as cumulative acts. Correct, correct. So you're saying their finding was a cumulative act hostile environment finding. Correct. And I'd also like to correct a misstatement by counsel about this. In fact, the commission through the ALJ did directly address this intervening cause concept. And what it said was at page 832 of the appendix and page 27 of the decision footnote 1, what the commission, it says is, you know, respondents maintain, you know, that there's a doctrine of continuing violation and there was a cessation. And the commission rejects that argument. So, in fact, the commission did, even though it didn't mention it when it was talking about Morgan, it directly addressed this point and rejected it. So, again, then you go back to look at Jenkins. And what Jenkins said is first you look at the jurisdictional question. Could a reasonable fact finder find that this was part of the continuum of cumulative effects? And then you look at the, and then after that you look at defenses such as was there some sort of break. And now remember here, again, Mr. Waters will talk about this more, but again here, we don't know when, there are two things, we don't know when the pastoral committee dressing down occurred. It occurred sometime in early November, but so did the back rub. So we don't know which came before. If it came after, it's obviously not intervening. If it came before, it didn't have any effect. So, in either case, it doesn't help. And, again, I'd also like to correct counsel's statement about when Brad Anderson talked to the pastor. He talked to him in August when Ms. Lockard first went to Brad Anderson, not the second time when Ms. Lockard went with Ms. Brooks, and that's on page 422 of the transcript. So if I can just sum up, if this court has already found that timeliness is a question of fact, it would have to reverse that finding in order to come to a different conclusion about that, that it's a legal question and there's de novo review. In addition, this court and Sangamon County have already said this is strict construction. We don't consider, at the end of Sangamon County, they say because it's strict construction, we're not even going to consider any argument about curative factors, which is really the same argument that the pastor is making. We tried to fix this. Trying to fix it doesn't come into play when there's strict liability for a supervisor. That's at the very end of the decision, the majority decision in Sangamon County. They say we're not going to look at that because this is strict liability. And again, if I may just conclude, because there's strict liability, because this is a question of fact entitled to extremely deferential review, we ask that the court affirm the commission's decision on this sexual harassment hostile work environment claim. Thank you. Thank you, Ms. Walsh. And Mr. Waters. Listening to Mr. Mattis, I wonder if this was the same case I tried back in August of 2007. There, the acts of sexual harassment never happened. She was a liar. She bought on herself. She deserved to be fired. And how could you defend a case saying that we took effective intervening action when you're saying none of this ever occurred? And, of course, what happened was Judge Robinson made a finding of fact and found that these things occurred, and the defense switched gears and they're on plan B here. But to the extent that they've tried to argue that Judge Robinson ignored this and he voted so much of his time to whether or not this actually happened, that's because that's the case they were trying back then. I want to jump ahead because I've got a lot to cover and I'm worried about my time. Ms. Walsh talked a little bit about the Saginaw County case, which is clearly, you know, I told her before we started, if we had any guests, we'd just say, look at Saginaw County and sit down. It takes care of everything. Mr. Madison said that, well, it doesn't address this effective intervening act. Well, with all due respect, neither does Ms. Yerra. Ms. Yerra talks about Morgan and talks about one of the so-called Morgan exceptions, doesn't talk about the effective intervening act exception, which they concede in their brief. They say, well, Ms. Yerra doesn't talk about it because there were no facts to support it. Well, then how do you say Ms. Yerra opined it? But at any rate, it doesn't matter. Saginaw County case, the appellate court found that as a matter of law, as a matter of law, that the employer had taken effective remedial action and held for the employer. The Illinois Supreme Court says, no, we're not even going to consider that in this case. In Illinois, supervisor liability, which is what we have here, is strict liability and totally said it doesn't matter that there's been a finding as a matter of law that the employer took effective intervening action. It doesn't matter. It doesn't count. What was the effective intervening action here? Was it the counseling that Anderson gave to Jones in August of 2003? Probably not. What happens after that? And a number of things, and if I have time, I'll go through some of them with you. But after that, among other things that happened, besides the massage, we've got the pastor, along with John Grant, the spouse of the incoming chair of the board of directors, showing nude pictures to Ms. Lockhart. That's after this first counseling of Mr. Anderson or of Mr. Jones. The massage, as far as we can tell, occurred after one, two, or three counselings. So if there's effective intervening action, I'm not so sure it was effective, but that's probably arguing the wrong thing because the Illinois Supreme Court says effective intervening action is not a defense to supervisor liability in Illinois. So that pretty well takes care of that. What Morgan said, and there was some discussion with Ms. Welsh about this, is that a charge is timely as long as it is filed within 180 days of any act that is part of the hostile environment. Clearly what Judge Robinson found here, the argument that Mr. Anderson makes, well, this wasn't sexual, this was somehow solicitous, it just doesn't hold water. In the first place, Pastor Jones, among other things, had submitted, had subjected Lockhart to a continual barrage of throwing foam stress balls at her breast throughout a long course of her employment, physically invading her body. And the back rub is now actual physical contact, and there's an escalation of that. And if you look at the context of this massage, this occurs after Cheryl has complained two or three times and after our pastor has been, quote, counseled two or three times. And, you know, what is he saying? He's saying, yeah, you told on me, but you're back in my playground now, and I can do whatever I want whenever I want. To say that this somehow isn't part of the pattern of the sexual harassment is just, you know, it's not accurate. The harassment started about the spring of 01, and one of the points they make is, well, the massage is different. Now, this pastor offered up a smorgasbord of harassment, multiple requests for oral sex, discussion of unshaven mid-eastern women in thongs, reference to co-employee masturbation, comments to dress code should be miniskirts and hollertops, video, graphic video, throwing stress balls, references to bestiality. Maybe he was breaking new ground here, but it's still all part of the same pattern of harassment and subjugation, which is what this is really about. It's about power and showing someone that you can do what you want to do. I really don't understand the argument that there is a question of all here. Judge Robinson found, it's at A32 of the record, that what happened here was, in fact, a continuation of the prior harassing conduct and held that it was not qualitatively different. Counselor, do you have a point to make? That's a fact issue. I mean, in summary, the effective intervening act doctrine that Morgan refers to in DICTA has never been adopted by any Illinois court. In fact, Sagamon County specifically rejects that as a defense and supervisor liability case. What we have here is a fact issue. Was there an act that was part of a unitary hostile environment that occurred within the 180 days? Judge Robinson heard the facts and decided, as a matter of fact, that there was. Thank you, Mr. Waters. And Mr. Madison? Thank you, Your Honor. Your response has covered a lot of ground. I'll try to address at least a few of the points I have in response. I find it interesting that they say there's no question of law here and then in the next breath say, well, the Morgan exception, intervening action exception, doesn't actually apply. But in any case, I would say that that's a question of law and that that is a de novo standard. At most, if we're looking at an application of the law of the facts, it would be the intermediate standard. The Sagamon County case, I have to disagree with their contention of its holding. I think the strict liability supervisor employee liability is a different question. It was considered a different part of the opinion. You can look at the Sagamon County opinion and it only had a couple of paragraphs on the Morgan issue and then concluded by saying, well, we find that because part of the claim in that case occurred within the 180 days, it was timely. Without discussing it, I don't think in that case there was an intervening. That was a completely different set of facts. And the letter that was last time to act on that was certainly different, somewhat different, but it was still the culmination of that harassing conduct. We've got a supervisor who's trying to convince this employee to have an affair with him. When she refuses, he's continuously harassing her about it, trying to get her to accept. And that culminates in the timely letter, which is a forged letter from the health department trying to say that somebody reported her, some previous sex partner of hers reported her as having an STD. She's getting teased about that. I mean, that's sexual content. That's very different from the case we've got here. They talk about a lot of facts, and this is the appeal. We're stuck with the findings of fact, and we're looking at a very, very simple appellate issue, a very straightforward appellate issue. I mean, obviously if we could come and appeal and say, well, we disagree with the finding of credibility, I mean, we do disagree with the finding of credibility, but that's not the point of the appeal. We've got to stick with the findings of facts. The date on the Brad Anderson conversation is October 29, 2003. That is the finding of fact that the ALJ made in the record at page C444. That's the finding of fact we're stuck with. We're not disputing the findings of facts, and if they are, that would be a much more deferential standard. But we're accepting the ALJ's findings of facts. What we're disputing is his finding of law, that this was timely. As to the PRC action, when that pastoral relations committee meeting, when that occurred in relation to the shoulder rub, I don't think the record is ambiguous as to the exact date because there's no specific date attributed to the committee meeting. Both of those occurred in early November. It's actually the claimant's burden anyway to prove timeliness, but it doesn't matter because it's after that, it's still after that October 29 event. And, you know, the biggest thing here is the proximity, but you also have to look under the Morgan rule at that intervening action exception. And, you know, the respondents tried to say that that intervening action exception, the two exceptions in the Morgan rule, shouldn't apply. You know, first of all, that was a Title VII case, actually a less stringent time limitation because it's not jurisdictional. Here we're talking about a jurisdictional time limit, not subject to equitable defenses, which the Morgan rule arguably is. And, you know, when they start talking about Sandring County and strict construction statute and that it should be broadly construed, they're not actually arguing for a true statutory interpretation. They're arguing for a broad application of Morgan. The Morgan rule, when you bring that in and import it to Illinois and look at the Illinois statute, that's a broad, very broad expansion of liability. The statute says very clearly, the legislature there says 180 days. If the violation is within 180 days of the charge, then this remedy doesn't apply. The statutorily created remedy doesn't apply, and the commission does not have jurisdiction. The Illinois courts over decades have repeatedly said that that requires strict compliance. That's, you know, that's what the statute says. How's the reappointment? The Morgan rule expands that. And, you know, back to the question of law a bit of this, you know, I think if we're going to take the Morgan rule and we're going to expand the liability beyond the 180 days that the statute contemplates, we have to take those limitations of the Morgan rule in with it. And when you look at Guskiara and you look at Jenkins out of this district, first of all, those cases, you know, were very different fact patterns. Those, there was a clear continuation of the hostile environment. But the Guskiara decision talks about this concern about keeping this 180-day limit, and Jenkins' dissent also talks about that concern of that 180-day limit. And the concern being that you've got a complainant who, you know, all the hostile environment has completed here, and she's actually complained about it, the employer got action. But then she comes in more than 180 days later in April pointing to an innocuous event, this speaking of my cheek comment, and trying to bring all of that pre-180-day stuff in when it's clearly outside based on the statute. And that's the concern that the pullback that both Guskiara and Jenkins are wanting to make sure that there's, you know, there's a limit. You can't just take this Morgan rule and expand to the universe. And I respectfully request that that's precisely what the ALJ did and not correctly apply Morgan and ask for a reversal. Thank you, Your Honors. Thank you, Mr. Madison, and thank you all for your arguments today. We'll take this matter under advisement. We'd like to get rid of this position within a short day.